UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LAKIEA L. ROBINSON,

                          Plaintiff,

                -against-

SEDGWICK CLAIMS MANAGEMENT
SERVICE; INDEMNITY INS. OF N.
AMERICA; DAVID PRESPITINO; DIANNA
HOLLERHAN; JOHN SWEENY; COCA-
COLA,

                          Defendants.

23-CV-10782 (LTS)

ORDER OF DISMISSAL

LAURA TAYLOR SWAIN, Chief United States District Judge:

Plaintiff, who is proceeding *pro se* and *in forma pauperis*, filed this complaint alleging that Defendants violated her rights. By order dated April 15, 2024, the Court directed Plaintiff to amend her complaint to address deficiencies in her original pleading. Plaintiff filed an amended complaint on April 23, 2024, and the Court has reviewed it. The action is dismissed for the reasons set forth below.

**STANDARD OF REVIEW**

The Court must dismiss an *in forma pauperis* complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret

them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

## BACKGROUND

The following allegations are drawn from Plaintiff's amended complaint and the attached exhibits. While Plaintiff was employed at the Coca-Cola factory in Elmsford, New York, she applied for workers' compensation benefits for "occupational disease" and "mental stress," indicating that her "initial disability date began 02/22/2017," and her "return to work date [was] 02/24/2017." (ECF 7 at 18, 22.) According to the State of New York Workers' Compensation Board report attached to the amended complaint, Plaintiff's claim for benefits was denied on March 29, 2017, on the following grounds: (1) "stress non-work related"; (2) "[n]o compensable accident"; (3) "[n]ot in course and scope of employment"; (4) "no medical evidence of injury"; and (5) "no injury per statutory definition." (*Id.* at 17.)

Plaintiff states that the following is the basis for her claim:

I was accused of having Herpes prior to me contracting herpes. I took a test with my GYN Doctor and my test results was negative. I later took the test two years later and came back positive with no antibody in my syetm which means I had just contracted Herpes with the last 10 consecutive days. I have attached a copy of my test results proving my status at that time. It's the management team that speaks to and replay input to Sedgwick claims. I feel the management wrote me off as filth without even knowing my original test results which clearly say negative. It made me feel ashamed and bad about myself. I never provide my test results to them. Now im voluntarily giving them to the federal court. I was told by my GYN doctor that this was not contracted by sex. By my doctor visual exam he could tell.

2

I was inside Coca-Cola when I felt something going through my body after leaving the bathroom in Coca-Cola. Bad faith insurance wrongfully denied. Slander. Defamation. Claim Rejection. I feel that they was instructed by management to deny my claim because they didn't want to expose the branch, etc. I received in the mail a form of acceptance from Sedgwick than two days later I received a denial letter in the mail from Sedgwick.

(*Id.* at 6.)[1]

Plaintiff contends that these events, which she alleges occurred in 2017, have impaired her "quality of life," "made [her] PTSD worse," and caused her panic attacks, emotional distress, and sleepless nights. She seeks $4 million in damages each for herself and her husband. Plaintiff's original complaint named only Sedgewick Claims Management Services, Inc., and "Indemnity Ins. of N. America," but in her amended complaint Plaintiff also adds Defendants Coca-Cola, Branch Manager David Prespitino and his "boss" John Sweeney, and Human Resources Manager Dianne Holleran. (*Id.* at 4.)[2]

Plaintiff invokes the Court's federal question and diversity jurisdiction. She states that her claims arise under "HIP[A]A, No Surpirse Act, GINA, Womens Rights, breach of fiduciary duty, Civil Rights Act of 1964, the Fourteenth Amendment, FMLA, Constitution Rights." (*Id.* at 2.) She attaches a November 17, 2023 Notice of Right to Sue from the Equal Employment Opportunity Commission ("EEOC") which states that the charge was dismissed for lack of jurisdiction. (*Id.* at 8.)

---

[1] All spelling and punctuation in quoted material is from the original, unless otherwise noted.

[2] Plaintiff has several other pending suits arising from her employment at the Coca-Cola factory. *See Robinson v. Kelly*, ECF 1:24-CV-0625, 4 (LTS) (S.D.N.Y. Jan. 29, 2024) (complaint alleging unauthorized disclosure of information to former employer transferred to Connecticut); *Robinson v. Bagwell*, ECF 1:24-CV-0621, 1 (UA) (S.D.N.Y.); *Robinson v. MagnaCare*, ECF 1:24-CV-0869, 6 (S.D.N.Y. Apr. 15, 2024) (amended complaint filed); *Robinson v. Coca-Cola*, ECF 1:23-CV-10552, 1 (UA) (S.D.N.Y.); *Robinson v. Aetna,* No. 1:23-CV-11100, 1 (LTS) (S.D.N.Y.).

Plaintiff alleges that she is domiciled in Connecticut. (ECF 7 at 2.) She lists addresses for the individual defendants at the Coca-Cola factory in New York, but she does not list their home addresses. (*Id*. at 4.) Plaintiff alleges that Defendant Sedgwick Claims Management is a citizen of "Rochester, New York," and that Indemnity Insurance of North America is a citizen of "Wilmington, Delaware," though she does not plead facts about where either company is incorporated or has its principal place of business. (*Id*. at 3.)

**DISCUSSION**

**A.      Title VII of the Civil Rights Act of 1964**

In her amended complaint, Plaintiff invokes "the Civil Rights Act of 1964," and the Court construes this allegation as invoking Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17. Title VII prohibits employment discrimination on the basis of race, color, religion, sex, or national origin. Title VII provides that "[i]t shall be an unlawful employment practice for an employer … to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a).

Plaintiff does not specify the defendant against whom the Title VII claim is asserted. Plaintiff may be bringing the Title VII claim against her former employer, Coca-Cola (which she has added as a new defendant in the amended complaint), even though she recently filed an employment discrimination suit against Coca-Cola that remains pending. *See Robinson v. Coca-Cola*, ECF 1:23-CV-10552, 1 (UA) (S.D.N.Y.). Any Title VII claims that Plaintiff is asserting against Coca-Cola in this suit are dismissed without prejudice because Plaintiff already has a pending an employment discrimination against Coca-Cola arising from events in 2017, *See*

4

*Robinson*, ECF 1:23-CV-10552, 1, and there is no apparent reason to bring these overlapping claims in separate actions.[3]

Plaintiff also does not state a Title VII claim against any other defendant. She cannot state a Title VII claim against the individual defendants, because Title VII does not provide for individual liability. *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995). Plaintiff also has not plausibly alleged that Defendants Sedgewick Claims Management and Indemnity Insurance of North America took any adverse action against her in employment on the basis of her race, color, religion, sex, or national origin.

In sum, Plaintiff's Title VII claims against Coca-Cola are dismissed without prejudice to Plaintiff's pursuing her employment discrimination claims against Coca-Cola in her pending action. *See Robinson*, ECF 1:23-CV-10552, 1. The Court dismisses Plaintiff's Title VII claims against the remaining defendants for failure to state a claim upon which relief can be granted.

## B.    Workers' Compensation Benefits

New York law provides the following process for applying for workers' compensation benefits:

> An injured employee who seeks workers' compensation benefits must file a claim with the Board or his employer. N.Y. Workers Comp. Law § 20. The insurance carrier is afforded the opportunity to dispute the claim, *id.* § 25(2)(a); 12 N.Y. Comp. Codes R. & Regs. § 300.22(a), and the dispute is addressed in the first instance by a Workers' Compensation Law Judge ("WCLJ"), see N.Y. Workers Comp. Law § 150; 12 N.Y. Comp. Codes R. & Regs. § 300.1(a)(10). A party may seek administrative review of the decision of the WCLJ by a three-member Board panel and, if review is granted and the panel does not make a unanimous decision, review of the full Board is mandated upon request of either party; if the decision is unanimous, any party may seek discretionary review by the full Board.

---

[3] Plaintiff also does not sufficiently allege that Coca Cola subjected her to an adverse employment action because of discrimination on the basis of her race, color, religion, sex, or national origin.

> The statutory scheme allows a party to seek judicial review of the Board's administrative decision in the New York State Supreme Court, Appellate Division, Third Department. N.Y. Workers Comp. Law § 23. A single court was designated for this purpose so as to establish a judicial forum having "specific expertise to deal with the complexity" of the issues presented in workers' compensation cases. *Empire Ins. Co. v. Workers' Comp. Bd.*, 201 A.D.2d 425, 607 N.Y.S.2d 675, 675 (1st Dept. 1994). Appeals in workers' compensation cases "shall be heard in a summary manner and shall have precedence over all other civil cases in such court." N.Y. Workers' Comp. Law § 23. Further review may be sought in the New York State Court of Appeals.

*NorGuard Ins. Co. v. Lopez*, No. 15-CV-5032 (DRH) (AYS), 2017 WL 354209, at *7 (E.D.N.Y. Jan. 24, 2017).

Plaintiff attaches to her amended complaint documents reflecting that she applied for and was ultimately denied workers' compensation benefits. Plaintiff seems to argue that, contrary to the Board's finding that her injury was "[n]ot in course and scope of employment," in fact, she contracted a communicable disease at work in 2017, and experienced stress that was work related. Plaintiff asks this Court to "send a correction to the New York Compensation Board." (ECF 7 at 6.)

Judicial review of the allegedly wrongful denial of worker's compensation benefits in 2017, would have been available, if at all, in the New York State Supreme Court, Appellate Division, Third Department at the conclusion of the administrative process, *see* N.Y. Workers Comp. Law § 23, and potentially in the New York State Court of Appeals thereafter. Federal district courts play no role in reviewing the denial of worker's compensation benefits, and no appeal to this Court is available from a decision of the state court. See *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 644 n.3 (2002) (holding that the statute authorizing original federal jurisdiction, 28 U.S.C. § 1331, "does not authorize district courts to exercise appellate jurisdiction over state-court judgments[.]"); *Dorce v. City of New York*, 2 F.4th 82, 101 (2d Cir. 2021) (district courts are barred from "hearing cases that in effect are appeals from state court

judgments, because the Supreme Court [of the United States] is the only federal court with jurisdiction over such cases." (citing 28 U.S.C. § 1257)). Relief in connection with the denial of workers' compensation benefits is therefore unavailable in this Court, and any claim in the amended complaint seeking such relief must be dismissed.

## C.     Federal claims under GINA, ERISA, FMLA, and the U.S. Constitution

As Plaintiff has done in her other suits, Plaintiff cites numerous federal laws in her amended complaint without pleading any facts showing how these are relevant.[4] First, Plaintiff invokes the Genetic Information Nondiscrimination Act ("GINA"), which makes it "an unlawful employment practice for an employer to fail or refuse to hire . . . any employee . . . because of genetic information with respect to the employee." 42 U.S.C. § 2000ff–1(a)(1). There are no facts in the amended complaint suggesting that any Defendant was aware of Plaintiff's genetic information or acted unlawfully in reliance on her genetic information. Plaintiff thus fails to state a claim under the GINA.

Second, Plaintiff invokes the Employee Retirement Income Security Act ("ERISA"). To state a claim under the ERISA statute for benefits due, a plaintiff must allege that the benefit plan is an ERISA plan, that the plaintiff is a participant in the plan, and that the defendant breached its duty to pay the plaintiff under the terms of the plan. *See Carlson v. Principal Fin. Group*, 320 F.3d 301, 306-308 (2d Cir. 2003). Plaintiff's amended complaint fails to state a claim under

---

[4] Plaintiff's amended complaint in *Robinson v. MagnaCare*, No. 24-CV-0869 (LTS) (S.D.N.Y.), which alleged that medical billing information was released to her employer, relied on GINA, ERISA, and amendments to Title XXVII of the Public Health Service Act (the "No Surprises Act"). In *Robinson v. Aetna*, No. 23-CV-11000 (LTS), Plaintiff also invoked GINA, ERISA, and FMLA, without pleading any facts about how these federal statutes applied to her claims against Aetna.

ERISA because, despite having been granted an opportunity to amend her complaint to clarify

her claims, she does not allege any facts showing that ERISA is relevant to her allegations.

Third, Plaintiff invokes the Family and Medical Leave Act ("FMLA") as a basis for her

claims. The FMLA allows covered employees to take up to 12 weeks of leave per year to care

for the employee's own serious health condition or to care for a parent, spouse, or child who has

a serious health condition. *Higgins v. NYP Holdings, Inc*., 836 F. Supp. 2d 182, 193 (S.D.N.Y.

2011) (citing 29 U.S.C. § 2612). The Second Circuit has recognized two types of FMLA claims:

interference claims and retaliation claims. *See Smith v. Westchester Cnty*, 769 F. Supp. 2d 448,

463 (S.D.N.Y. 2011) (citing *Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004)). The

facts alleged in the amended complaint suggest that Plaintiff missed two days of work in

February 2017, for which she applied for workers' compensation benefits. Plaintiff does not

allege that she asked for or was denied leave under the FMLA in connection with the events in

2017 giving rise to her claims, and she thus fails to state a claim on which relief can be granted

under the FMLA.

Fourth, Plaintiff invokes her "constitutional rights," including the Fourteenth Amendment

and "womens rights." (ECF 7 at 2.) All of the defendants named in the amended complaint,

including Plaintiff's former employer Coca-Cola, and employees from its Elmsford, New York

factory, as well as the insurer and the claims management company, are private parties.

Generally, "the United States Constitution regulates only the Government, not private parties."

*Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002). Nothing in the amended

complaint plausibly suggests that any defendant was acting under color of state law. *See Lindke

v. Freed,* 601 U.S. 187, 198-99 (2024) ("[W]hen the challenged conduct 'entail[s] functions and

obligations in no way dependent on state authority," state action does not exist.") (citing *Polk

*County v. Dodson*, 454 U.S. 312, 318–319 (1981)). The amended complaint does not allege any facts indicating the denial of Plaintiff's constitutional rights, and she has not sued any government entities or actors regulated by the U.S. Constitution. Plaintiff thus fails to state a claim on which relief can be granted for a violation of her constitutional rights.

**D.    State Law Claims**

Plaintiff mentions state law causes of action in her amended complaint. She writes, without including any factual information, "bad faith insurance wrongfully denied. Slander. Defamation. Claim rejection." (ECF 7 at 6.)

A district court may decline to exercise supplemental jurisdiction over state-law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). Here, the Court has dismissed all of the federal claims over which the Court has original jurisdiction.

Plaintiff, however, also invokes the Court's diversity jurisdiction, 28 U.S.C. § 1332, as a basis for bringing her state law claims in federal court. As set forth in the April 15, 2024 order to amend, to establish diversity jurisdiction under Section 1332, a plaintiff must allege that the plaintiff and the defendant are citizens of different states. *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998). In addition, the plaintiff must allege to a "reasonable probability" that the claim is in excess of the sum or value of $75,000.00, the jurisdictional amount. *See* 28 U.S.C. § 1332(a); *Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006).

For purposes of diversity jurisdiction, "[a]n individual's citizenship, within the meaning of the diversity statue, is determined by [her] domicile." *Johnson v. Smithsonian*, 4 Fed. App'x 69, 70 (2d Cir. 2001) (citing *Palazzo v. Corio*, 232 F.3d 88, 42 (2d Cir. 2000)). A corporation is

a citizen, for purposes of Section 1332, of both the State where it is incorporated and the State where it has its principal place of business. *Hertz Corp. v. Friend*, 559 U.S. 77, 93 (2010). A plaintiff bears the burden of establishing that diversity jurisdiction existed at the time the action was commenced. *Linardos v. Fortuna*, 157 F.3d 945, 947 (2d Cir. 1998).

Plaintiff's original complaint failed to satisfy her burden of pleading facts showing diversity of citizenship, and the Court explained in the Order to Amend what facts she must allege to plead diversity jurisdiction and granted Plaintiff an opportunity to amend her complaint. (ECF 6.) In Plaintiff's amended complaint, she fails to plead facts establishing the citizenship of defendants. She has not pleaded facts about where the individual defendants are domiciled, and she has not alleged facts about where the corporate defendants are incorporated or have their principal places of business. Plaintiff's amended complaint thus does not satisfy her burden of showing that the Court has diversity jurisdiction of her state law claims.

Generally, a district court should allow a plaintiff "to drop dispensable nondiverse defendants whose presence would defeat diversity of citizenship." *Jaser v. New York Prop. Ins. Underwriting Ass'n*, 815 F.2d 240, 243 (2d Cir. 1987). Leave to amend may be denied, however, if the plaintiff has already been given an opportunity to amend and has failed to cure the complaint's deficiencies. *See Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). The Court declines to grant Plaintiff further leave to amend her complaint to attempt to meet her burden of establishing diversity jurisdiction of her state law claims.[5]

---

[5] Plaintiff also has not pleaded facts sufficient to support her state law claims. For example, she asserts "defamation" and "slander" but does not plead facts about what false information was published to another or which defendant is alleged to have engaged in these state law torts.

Because the Court has dismissed Plaintiff's federal claims, and she has not pleaded facts sufficient to establish diversity of citizenship, the Court declines to exercise its supplemental jurisdiction of any state law claims that Plaintiff may be asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'") (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997)).

## CONCLUSION

The Court dismisses Plaintiff's Title VII claims against Coca-Cola without prejudice to her pursuing her employment discrimination claims in *Robinson*, ECF 1:23-CV-10552, 1. The other federal claims in Plaintiff's amended complaint, filed *in forma pauperis* under 28 U.S.C. § 1915(a)(1), are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and the Court declines, under 28 U.S.C. § 1367(c), to exercise supplemental jurisdiction of Plaintiff's state law claims.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Court directs the Clerk of Court to enter judgment.

SO ORDERED.

Dated:   May 28, 2024
         New York, New York

                                    /s/ Laura Taylor Swain
                                    LAURA TAYLOR SWAIN
                                    Chief United States District Judge